**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:22 CR 0049 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM SIMS, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. Introduction

On April 23, 2026, Defendant William Sims filed the instant 28 USCS § 2255 motion to vacate, set aside, or correct sentence. ECF 127. Defendant's motion raises three grounds for relief: (1) Ineffective Assistance of Counsel for a variety of reasons; (2) Prosecutorial Misconduct; and (3) Judicial Bias, Abuse of Discretion and Loss of Impartiality. The Government filed a brief in opposition on June 4, 2026. ECF Doc. 130. The Court granted an extension until August 12, 2026 for Defendant to file a reply, but he did not file one. For the reasons explained below, the Court DENIES Defendant's § 2255 petition.

## II. Background[1]

Law enforcement began investigating Defendant after an informant claimed to have been purchasing crack cocaine and heroin from him for a "long time." ECF Doc. 30-1. The informant identified Defendant in photographs, stated that he drove a red Ford Fusion with a temporary tag,

[1] From *United States v. Sims*, 2025 U.S. App. LEXIS 5208 at *1-*4.

provided detectives with Defendant's cell phone number, and claimed to have purchased drugs at 3211 W. 121st Street where Defendant was residing.

Detective Robert Jorgenson surveilled Defendant's residence. He observed that it had two entrances: the front door (west-facing) and a side door (south-facing). Jorgenson witnessed Defendant go in and out of the residence through the side door. He did not witness anyone else use that entrance. Jorgenson also observed the same red Ford Fusion with the temporary tag parked on the street in front of the residence. Furthermore, an anonymous "concerned citizen" confirmed that Defendant lived in the upstairs unit of the residence. ECF Doc. 30-1. This citizen also stated that they witnessed "heavy vehicle and foot traffic coming from that address at all hours of the day" which in the detectives' experience was consistent with drug trafficking. *Id.*

With the help of a paid informant—one they had successfully used in the past—detectives organized two controlled buys. Both buys followed the same pattern: Detective Ryan McNamara met the informant at a predetermined location where he searched the informant and the informant's car to ensure they were free of drugs or money. He then gave the informant marked money to purchase drugs from Defendant. Using the previously provided telephone number, the informant called Defendant to plan a meeting location. Detective McNamara confirmed that the informant used the correct phone number, overheard the conversation, and noted the location where the transaction was to occur. He then followed the informant to the location and observed the transaction from a distance. In the meantime, Jorgensen would remain parked outside of the residence to observe and report on Defendant's movements. After each buy, McNamara followed the informant back to the predetermined location to retrieve the purchased drugs. According to the affidavit, detectives observed the following:

First Buy

Shortly after the informant placed the call, Defendant drove to his residence and entered through the side door. A few minutes later, he exited the building through the side door and walked north toward the buy location, where the informant was already waiting in a car. Shortly after, Defendant approached and entered the informant's car. The informant then drove toward the residence before Defendant got out and walked back to the apartment. McNamara retrieved crack cocaine from the informant.

Second Buy

Detectives conducted the second buy within a week of the first. After the informant placed the call, Defendant exited his residence through the side door and drove away in the same red Ford Fusion. Several minutes later, Defendant arrived at the buy location. The informant entered Defendant's car and exited after approximately thirty seconds. Defendant returned to the residence and entered through the side door. This time McNamara retrieved crack cocaine and heroin from the informant.

Within two days of the second controlled buy, detectives obtained a warrant to search the upstairs unit of the residence, which they executed two days later. The search unearthed narcotics, firearms, and drug paraphernalia.

## III. Procedural History

On December 22, 2022, Defendant filed a motion to compel production of the identity and contact information of the informant's identity. After briefing, the Court denied Defendant's motion reasoning that the informant's safety concerns outweighed Defendant's interest in interviewing the informant. ECF Doc. 28.

On February 2, 2023, Defendant filed a motion to suppress and requested a *Franks* hearing. After briefing, the Court conducted an evidentiary hearing on Defendant's motion. At the outset of the hearing, the Court noted that Defendant had not filed a reply in support of the motion and that it would not be conducting a *Franks* hearing. However, the Court permitted Defendant's attorney to cross-examine Detective McNamara regarding the affidavit for the search warrant. Defense counsel strongly urged the Court to question the veracity of McNamara's statements. Nonetheless, after hearing Detective McNamara's testimony and fully considering defense counsel's arguments, the Court found that there was no evidence to suggest that Detective McNamara's statements were false. The Court further found that McNamara's affidavit contained probable cause for the issuance of a search warrant. Accordingly, Defendant's motion to suppress was denied. ECF Doc. 51 at 45.

On May 23, 2023, Defendant filed a motion in limine arguing that, if the Government dismissed Counts 1 and 2 from the indictment, it should be precluded from producing any evidence related to the two controlled buys. ECF Doc. 37. The Government filed a response on June 2, 2023. At a hearing on June 8, 2023, the Government indicated that the informant was not going to testify during the trial and it was dismissing Counts 1 and 2 of the indictment. The Court found that, even though the informant would not testify at trial, the officers were permitted to testify regarding their personal knowledge and observations related to the informant. The Court reasoned that the officers could testify from their independent knowledge based on their surveillance of Defendant during the controlled buys. ECF Doc. 74 at 18-19. Thus, the Court denied Defendant's motion in limine to exclude all testimony related to the controlled buys and/or Counts 1 and 2. *See* ECF Doc. 52 and 53.

The case proceeded to trial on the remaining counts, and both Jorgenson and McNamara

testified. Jorgenson was the first to testify, but before he testified about the controlled buys Defendant renewed the objection from his motion in limine. The Court overruled the objection but instructed the jury that they were to use the information for the sole purpose of evaluating Defendant's knowledge or intent for the crimes with which he had been charged. Jorgenson explained how the controlled buys were set up and his personal observations during the controlled buys. Defense counsel thoroughly cross-examined Jorgenson on the lack of any surveillance recordings, the reliability of the informants used in the investigation, and Jorgenson's observations during the controlled buys.

During McNamara's testimony, Defendant objected again when the government began questioning McNamara on the controlled buys. Because McNamara had been present for both controlled buys and had observed the informant interact with Sims, the Court allowed him to testify regarding his personal observations. *See* ECF Doc. 102, pp. 181-182. However, since Jorgenson had already described the controlled buys in detail, the Court warned the government not to repeat the same questioning with McNamara on the controlled buys. The Court did allow a "very limited" inquiry into McNamara's observations of the controlled buys. *Id*. On cross-examination, Defendant questioned McNamara about events that occurred on November 10—six days before the first controlled buy—at which point the government objected. The Court called for a sidebar and the following colloquy took place:

> The Court: All right. Mr. Bryan [Sims's trial counsel], I limited over your -- it was because of your objection I limited this witness's testimony about things he did –
>
> Mr. Bryan: Judge, I'm just --
>
> The Court: -- before the search warrant, so you're opening the door to a whole lot of stuff that you wanted to keep out.
>
> Mr. Bryan: No, I'm not -- I'm just trying to set up the search warrant --

The Court: You don't need to set up the search warrant unless you want to open the things to the stuff that I left out.

Mr. Bryan: Okay, Your Honor.

The Court: All right.

Mr. Bryan: That's fine. I'm not going to talk about the controlled buys or --

The Court: You're bringing out on November 10th.

Mr. Bryan: Right. That was an interview of a witness.

The Court: Well, I mean, if you want to go there, I'll let [the government] put in whatever [it] wants. And I don't think you want that, and I don't think Mr. Sims wants that. So let's focus this, please.

Mr. Bryan: Okay, Your Honor.

ECF Doc. 102, pp. 212-213. After this interaction, Defendant refrained from questioning McNamara about the events prior to the execution of the search warrant altogether.

At the close of trial, the Jury found Defendant guilty of the remaining counts in the indictment, Counts 3 through 9. ECF Doc. 86. The Court sentenced Sims to an aggregate sentence of 195 months. ECF Doc. 108. Sims filed an appeal raising two issues: that the Court erred in denying his motion to suppress and that his Sixth Amendment right to confrontation was violated when he was prevented from cross-examining Detective McNamara at trial. ECF Doc. 122 at 6-7. On March 4, 2025, the Court of Appeals affirmed the Court's conviction. ECF Doc. 123.

## IV. Timeliness

As a preliminary matter, Defendant's motion is timely. 28 U.S.C. § 2255(f)(1) proscribes a one-year statute of limitations for filing a motion, counted from the date on which the judgment becomes final. A conviction "becomes final upon conclusion of direct review." (*Raybon v. United States,* 867 F.3d 625, 629 (6th Cir. 2017) (citing *Sanchez-Castellano v. United States*, 358

F.3d 424, 426 (6th Cir. 2004)). When a defendant pursues a direct appeal, but the conviction is affirmed, "the judgment of conviction becomes final after the ninety-day period to file a petition for writ of certiorari expires." *Id.* The court sentenced Defendant on December 14, 2023. ECF 108. Defendant's appeal was decided and filed on March 4, 2025. *United States v. Sims*, 2025 U.S. App. LEXIS 5208. Defendant timely mailed a *pro se* § 2255 motion on March 4, 2026 within one year of the Court of Appeals' decision. His initial motion was stricken, but he was permitted to re-file his motion on or before April 23, 2026. *See* ECF Doc. 126. He re-filed his § 2255 motion on April 23, 2026. Thus, his §2255 motion is timely.

## V. Legal Standards

### A. § 2255

Under 28 U.S.C. § 2255(a), a prisoner in custody under sentence of a district court may move the court that imposed the sentence to vacate the sentence on the grounds that it was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." In order to obtain relief under § 2255, a prisoner must demonstrate a constitutional error, a sentence that exceeds statutory limits, or an error of fact or law "so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A petitioner seeking to set aside his sentence pursuant to Section 2255 has the burden of "sustaining [his] contentions by a preponderance of the evidence." *Pough,* 442 F.3d at 964. Indeed, to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "Once the defendant's chance to appeal has been waived or exhausted," the courts "are entitled to presume that [the defendant] stands fairly and finally convicted." *Id.* at 164.

### B. Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner is required to demonstrate: 1) that counsel's performance was so deficient that counsel did not actually perform as counsel; and 2) that his defense was so prejudiced by counsel's conduct that it is reasonably probable that the outcome of the case would have been different but for the ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Conclusory allegations that fail to articulate counsel's deficiencies or how they prejudiced the case are insufficient to sustain a claim of ineffective assistance of counsel on a § 2255 motion. *Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

## VI. Analysis

### A. Ground One – Ineffective Assistance of Counsel

Ground One of Defendant's § 2255 petition is a claim for ineffective assistance of counsel. ECF Doc. 127 at 2-3. Defendant lists the following complaints regarding his attorney's assistance: 1) failing to correctly challenge, investigate, litigate and properly suppress evidence obtained pursuant to a facially invalid and unauthenticated search warrant; 2) failing to investigate and litigate claims of altered body-worn camera footage; 3) failing to respond to the Government's opposition to a Franks hearing; 4) failing to investigate and litigate the lease agreement at the suppression stage; 5) failing to investigate, object to, and challenge the prosecutor's false claim that law enforcement possessed an arrest warrant for the Defendant; 6) failing to object to the prosecution dismissing Counts One and Two of the indictment while proceeding on derivative counts based on those dismissed allegations; 7) failing to retry or relitigate suppression despite newly apparent factual and legal defects in the Government's case; 8) failing to litigate judicial bias and seek recusal; 9) failing to advise Defendant of the benefits

of accepting a plea agreement versus the maximum penalties exposure at trial; 10) failing to retain an expert witness to rebut the Government's expert; 11) failing to object to prosecutorial misconduct during closing arguments. ECF Doc. 127 at 3. Each of Defendant's complaints is directly addressed below.

Several of Defendant's complaints involve counsel's alleged failure to investigate issues related to the search warrant and the search of Defendant's residence. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "[A]ttorneys can always do more in preparation for a trial." *Mason v. Mitchell,* 320 F.3d 604, 618 (6th Cir. 2003). However, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard,* 545 U.S. 374, 383, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). In short, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

1) Invalid Search Warrant

Defendant complains that his counsel failed to "correctly challenge, investigate, litigate and properly suppress evidence obtained pursuant to a facially invalid and unauthenticated search warrant." Defendant does not provide any support for his claim that his counsel's investigation or challenge was deficient. Defendant's counsel filed a motion to suppress and requested a Franks hearing. He fully developed Defendant's argument related to the affidavit for search warrant. The affidavit and search warrant were submitted and reviewed by the Court prior to the February 28, 2023 hearing at which the affiant, Detective McNamara, testified. The

Court found that there was no evidence of any false information in the affidavit and that it was valid *on its face*. Thus, it is unclear how further investigation could have revealed a deficiency which Defendant claims appears on the face of the warrant. Defendant has not shown that his counsel was ineffective for failing to investigate or challenge the search warrant before trial.

2) Altered body-camera footage

Defendant argues that counsel should have further investigated altered body worn camera footage but does not explain how the camera footage was altered or how further investigation would have uncovered the alleged alteration. There is simply no support for this assertion. Counsel was not ineffective for failing to raise this meritless issue. Deficient representation does not exist where counsel fails to file meritless motions. *Jalowic v. Bradshaw*, 657 F.3d 293, 321-322 (6th Cir. 2011).

3) Failing to Respond to the Government's Opposition to a Franks Hearing

Defendant argues his attorney was ineffective for failing to file a reply to the Government's opposition to Defendant's motion to suppress. While it is true that Defendant's counsel did not file a reply in support of the motion to suppress, this fact did not prejudice Defendant in any way. The *Franks* hearing essentially took place when Defendant's counsel was permitted to question Detective McNamara and fully develop Defendant's argument related to the affidavit for search warrant. The Court rejected Defendant's challenge to the affidavit for search warrant because it lacked merit, not because counsel failed to file a reply brief. In short, Defendant's reply brief would not have changed the outcome of the Court's ruling on the motion to suppress. Defendant has not set forth a valid ineffective assistance of counsel claim on this issue.

4) Lease Agreement

Defendant argues that his counsel was ineffective for failing to argue that he was not a party to the lease of the residence searched by law enforcement in this case. This is a meritless argument, and Defendant's attorney was not ineffective for failing to raise it. Detectives observed Defendant coming and going from the searched property both before and after he participated in controlled drug buys. Even if his name was not on the lease, that is irrelevant. As already noted, deficient representation does not exist where counsel fails to file meritless motions. *Jalowic v. Bradshaw*, 657 F.3d 293, 321-322 (6th Cir. 2011).

5) Failing to Investigate Arrest Warrant

Next, Defendant argues that he received ineffective assistance of counsel because his attorney failed to investigate an arrest warrant mentioned by the AUSA in court. This is another meritless argument, and counsel was not ineffective for failing to raise it. Regardless of whether officers obtained an arrest warrant, they were permitted to detain Defendant while executing their search warrant. Furthermore, after discovering narcotics during their search, they had probable cause and were permitted to arrest Defendant. *See United States v. Orosco,* 2024 U.S. App. LEXIS 4406 at *4 (6th Cir., Feb. 26, 2024) citing *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). Counsel was not ineffective for failing to raise this irrelevant argument.

6) Failing to object to the Dismissal of Counts One and Two of the Indictment

Defendant argues that his counsel was ineffective for failing to object to the Government's dismissal of Counts 1 and 2 of the indictment. This argument lacks merit because even if counsel had objected, his objection would have been overruled. The Government made a strategic decision to dismiss Counts 1 and 2 of the indictment so that its confidential informant

would not be required to testify at trial. The Court cannot think of any legal basis upon which Defendant's counsel could have objected to the dismissal of Counts 1 and 2. Nor has Defendant identified one. Fed. R. Crim. P. 48(a) permits the government to dismiss an indictment with leave of Court, and the "prosecution's failure to prosecute certain counts of an indictment does not affect the validity of the indictment as to the other counts." *United States v. Miller*, 471 U.S. 130, 136, 105 S. Ct. 1811, 85 L. Ed. 2d 99 (1985) (citing *Dealy v. United States*, 152 U.S. 539, 542, 14 S. Ct. 680, 38 L. Ed. 545 (1894)). The Government was permitted to dismiss Counts 1 and 2 to protect the identity of the confidential informant. Defendant's counsel was not ineffective for failing to object to the Government's appropriate dismissal of Counts 1 and 2. Even if he had objected, the Court would not have been able to force the Government to prosecute charges it wanted to dismiss. *See Brown v. United States,* 2021 U.S. Dist. LEXIS 219098 at *8-*9 (E.D. Tenn. 2021).

7) Failing to Retry or Relitigate Suppression

Defendant argues that his counsel was ineffective for failing to relitigate his motion to suppress after the Government dropped Counts 1 and 2 of the indictment. This argument appears to be based on Defendant's misconception that information received from the informant would have been "excised" from the search warrant affidavit after the Government dismissed Counts 1 and 2. That is not the case. The fact that the informant was no longer testifying at trial did not have any impact on Detective McNamara's search warrant affidavit. Defendant's motion to suppress had already been fully litigated, and there was no basis to renew it. *See Guadarrama v. United States,* 2016 U.S. Dist. LEXIS 81617 at *6, citing *Worthington v. United States*, 726 F.2d 1089, 1093 (6th Cir. 1984). Defendant's attorney was not deficient for failing to seek reconsideration of Defendant's motion to suppress.

8) Failing to Raise Judicial Bias

Defendant argues that the court "abandoned its role as neutral and detached magistrate by suggesting dismissal of counts one and two after denying suppression…" Defendant mischaracterizes the Court's position in discussing the dismissal of Counts One and Two with counsel. During a hearing on January 19, 2023, while the parties were discussing disclosure of the informant's identity, the Court indicated that if the Government was not willing to disclose the identity of the confidential informant (due to concerns for the informant's safety) the first two counts of the indictment would have to be dismissed either by the Government or the Court at trial. ECF Doc. 53 at 17. The Court was not suggesting a litigation strategy to the Government. Rather, the Court recognized that the informant's testimony would likely be necessary if the Government proceeded on Counts One and Two, which were directly related to the informant receiving drugs from the Defendant during the controlled buys. Nothing about this open-court discussion suggested judicial bias, and Defendant's counsel was not ineffective for failing to question the Court's impartiality. In point of fact, the Court was protecting the Defendant's rights by prohibiting the Government from prosecuting Counts One and Two via hearsay testimony.

9) Failing to Advise Regarding Plea Agreement

Defendant argues that counsel failed to advise him of the benefits of accepting a plea agreement versus the maximum penalty exposure at trial. While the Sixth Amendment right to effective counsel includes plea negotiations, Defendant cannot show that he would have accepted a plea but for his attorney's ineffective assistance. *See Missouri v. Frye,* 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In fact, the record demonstrates the opposite. During a pre-trial hearing on April

11, 2023, a potential plea agreement and the maximum penalty were directly discussed with Defendant on the record. During the hearing, the Government represented that it was willing to offer a plea agreement which would be lower than the maximum penalty, but Defendant was not interested in considering it. ECF Doc. 55 at p. 10. At the very least, Defendant was advised on the record that he could potentially enter into a plea agreement with a much lower sentence than the maximum penalty, and he stated that he was not interested. ECF Doc. 55 at p. 10. He has not shown that his counsel was ineffective in advising him or that he would have even considered such advice.

10) Expert Witness

Defendant argues that his attorney was ineffective for failing to call an expert witness to rebut the Government's expert witness. Defendant represents that the Government's expert witness testified that drug dealers use guns to protect their drugs or proceeds from drug sales. Defendant argues that his attorney had an "affirmative duty to conduct a reasonable investigation and to counter the prosecution's case with appropriate expert assistance where necessary." Defendant believes a defense expert could have established that "(1) Firearms are commonly possessed for lawful or personal reasons, not drug trafficking; (2) drug quantity alone is an unreliable indicator of intent to distribute; (3) So-called "drug dealer profiles" lack scientific rigor and vary widely; (4) The absence of fingerprints, DNA, or actual possession undermines firearm nexus."

While calling an expert witness to opine on these issues *may* have helped Defendant's case, it would only be second-guessing trial counsel's strategy, which this Court declines to do. *See Samatar v. Clarridge,* 22 Fed. App'x 366, 372 (6th Cir. 2007), citing *State v. Williams,* 74 Ohio App. 3d 686, 600 N.E.2d 298, 304 (Ohio Ct. App. 1991). The decision whether to call a

witness is generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel. *Id.* Further, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *Id.; State v. Hartman*, 93 Ohio St. 3d 274, 2001 Ohio 1580, 754 N.E.2d 1150, 1177 (Ohio 2001). In fact, in many criminal cases trial counsel's decision not to seek expert testimony "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *Id.; State v. Glover*, 2002-Ohio-6392, 2002 Ohio App. LEXIS 6235 at ¶ 25 (12th Dist.). "Further, even if the wisdom of such an approach is debatable, 'debatable trial tactics' do not constitute ineffective assistance of counsel." *Id.* (quoting *State v. Clayton*, 62 Ohio St. 2d 45, 402 N.E.2d 1189 (Ohio 1980)). Here, it is debatable whether an expert witness would have assisted Defendant's case. Accordingly, Defendant has not shown that his attorney was constitutionally deficient for failing to call an expert witness to testify in his defense.

11) <u>Prosecutorial Misconduct</u>

Finally, Defendant contends his counsel was ineffective for "failing to object to prosecutorial misconduct during closing arguments." Defendant argues it was improper for the prosecutor to argue a hypothetical scenario – that Defendant could have run back into the residence to get his firearm if "someone was coming to do him bodily harm." The problem with this argument is that it was Defendant's counsel who first argued that Defendant could have possessed his firearm for a reason other than in furtherance of drug trafficking crime. *See* ECF Doc. 100 at 188. The prosecutor was permitted to rebut this suggested purpose for the firearm in his closing argument. ECF Doc. 103 at 867. Defendant's attorney did not provide ineffective assistance of counsel by failing to object to the prosecutor's comments during closing argument.

Doing so may have only brought more attention to the prosecutor's arguments. Strategic decisions by counsel are not usually ineffective assistance. *See Lewis v. Alexander*, 11 F.3d 1349, 1353 (6th Cir. 1993); *Hughes v. United States,* 258 F.3d 453, 457 (6th Cir. 2001).

**B. Grounds Two & Three – Prosecutorial Misconduct and Judicial Bias**

In Grounds Two and Three, Defendant raises issues which were not raised in his direct appeal and are, therefore, procedurally defaulted.[2] Generally, a defendant must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (quoting *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001)); *see also Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (explaining that "[u]nder the Supreme Court's procedural-default rule," a defendant's failure to raise a claim "during the 'main event' (his criminal litigation) means that he presumptively cannot raise it in an after-the-fact § 2255 motion."). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Sullivan*, 587 F. App'x at 942 (6th Cir. 2001) (quoting *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).

Defendant has not even attempted to show cause or prejudice in relation to his claims for prosecutorial misconduct or judicial bias. The Government's brief in opposition argues that these claims were procedurally defaulted, and Defendant did not file a reply. Nor did Defendant argue or submit evidence showing that he is actually innocent of the crimes for which he was

[2] Regarding Defendant's judicial bias claim, he raised a similar claim couched as an ineffective assistance of counsel claim, which the Court has already addressed. In addition to being procedurally defaulted, Defendant's judicial bias claim lacks merit.

convicted and which were affirmed on appeal. Accordingly, Defendant's claims for prosecutorial misconduct and judicial bias are hereby dismissed as procedurally defaulted.

**VII. Conclusion**

Because Ground One of Defendant's petition lacks merit and Grounds Two and Three are procedurally defaulted, the Court DENIES Defendant Sims's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

**IT IS SO ORDERED.**

Dated: August 31, 2026

*s/Dan Aaron Polster*
United States District Judge